IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ROUSSEL,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, ET AL.,<br><br>    Defendants.<br>_____/ | No. C 12-04057 CRB<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION, DIRECTING AMENDMENT, AND SETTING BRIEFING SCHEDULE** |

Before the Court is Plaintiff's motion for preliminary injunction in this mortgage case. Because Plaintiff does not have a likelihood of success on any of his claims, the Court DENIES the motion, without prejudice. However, because Plaintiff's counsel represented at the hearing that she could amend the complaint to state a claim, the Court DIRECTS Plaintiff to file an amended complaint within 20 days of this Order.

**I.   BACKGROUND**

On February 29, 2008, Plaintiff Eric Roussel obtained a 30 year, 3 year fixed rate Pick-A-Payment mortgage loan secured by a Deed of Trust in the amount of $939,704.00 from Defendant Wachovia Mortgage, which was later acquired by Defendant Wells Fargo Bank (hereinafter collectively referred to as "Defendant"). First Amend. Compl. ("FAC") (dkt. 10) ¶ 15. At the time of the loan, Plaintiff was unemployed, but received income from several rental properties he owned. Id. ¶ 17. Plaintiff alleges that the agent who qualified him for the loan never asked for documentation to verify his income, nor what his monthly

expenses were, but nevertheless told Plaintiff that he qualified for a loan. Id. ¶ 17. Plaintiff believed that he had applied for a fixed rate mortgage loan, but instead received a Pick-A-Payment loan that included volatile interest rates and negative loan amortization. Id. ¶ 18.

In or about September 2010, Plaintiff contacted Defendant to inquire about a loan modification to avoid becoming delinquent on his loan payments. Id. ¶ 24. At that time, Defendant informed Plaintiff that it was not able to offer any loan modification options because Plaintiff was current on his mortgage payments. Id. Plaintiff became delinquent on his payments in or about November 2010, relying on Defendant's representations that he would be considered for a loan modification once be became delinquent. Id.

Plaintiff submitted an application for a HAMP loan modification shortly after becoming delinquent on his payments. Id. ¶ 25. However, Defendant denied the application on March 14, 2011, because "excessive forbearance of 31% could not be reached."[1] Id. Plaintiff subsequently filed another application for a loan modification. Id. ¶ 26. To help him pursue a loan modification, Plaintiff hired Secure Homeowner Solutions ("SHS") to contact Defendant. Plaintiff's Reply (dkt. 36) at 3. Nevertheless, Defendant denied Plaintiff's loan application, allegedly without explanation. FAC ¶ 26.

While in the process of reviewing Plaintiff's initial loan application, Defendant sent a letter to Plaintiff on January 15, 2011, informing him that his new monthly payment would be $5,080.55 as of April 1, 2011. Id. ¶ 27.[2] Plaintiff attempted to contact Defendant to clarify the increase in his payment, but was unsuccessful. Id. Plaintiff remained delinquent on his loans, and Defendant, through Defendant NDEx West, LLC (hereinafter "NDEx"), as substituted trustee, recorded a Notice of Default on October 31, 2011, and a Notice of Trustee's Sale on January 26, 2012. Id. ¶¶ 28-29.

---

[1] This means that Defendant was unable to create an affordable payment equal to 31% of Plaintiff's reported monthly gross income without changing the terms of the loan beyond the requirements of HAMP. See Req. for Judicial Notice ("RJN") (dkt. 34), Exh. D at 8.

[2] At the motion hearing, Plaintiff's counsel stated that Plaintiff's monthly payment before the increase was $4,993.85.

Plaintiff filed this action against Defendants Wachovia, Wells Fargo, and NDEx in the California Superior Court, County of San Francisco, and Defendants removed it to this Court on August 2, 2012 on federal question and diversity grounds. See generally Notice of Removal (dkt. 1).

The FAC alleges the following eleven causes of action: (1) fraud in the origin of the loan; (2) violation of RESPA; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) rescission; (6) violation of Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), (7) Unfair and Deceptive Business Act Practices ("UDAP"); (8) negligence; (9) negligent misrepresentation; (10) declaratory relief; and (11) quiet title. See generally FAC. Plaintiff filed an application for an Ex Parte Temporary Restraining Order and Order to Show Cause ("TRO") on September 28, 2012 (dkt. 26), predicated on the first and sixth causes of action, and this Court granted the TRO on the same day (dkt. 29). Plaintiff now seeks a preliminary injunction. See generally TRO; MPA in Support of TRO ("TRO MPA") (dkt. 26-1).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary injunctions. To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as a matter of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" Id. at 24 (internal citations omitted).

//
//
//

United States District Court
For the Northern District of California

## III. DISCUSSION

### A. Preliminary Injunctive Relief

#### 1. Likelihood of success on the merits

As an initial matter, Defendant argues that many of Plaintiff's claims are either barred by *res judicata* due to a recent class action settlement or preempted by HOLA. The Court will consider these arguments and then will discuss the remaining causes of action individually.

##### a. *Res judicata* effect of class action settlement

Defendant asserts that Plaintiff's claims involving the origination of the loan are barred by *res judicata* based on the class action settlement reached in In re Wachovia Corp., No. 5:09-md-02015-JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011). See Defendant's Response (dkt. 33) at 10-13. Plaintiff disagrees, stating that his claims are not barred by *res judicata* because he never received actual notice of the class action settlement, and thus he did not have an opportunity to optout. Roussel Decl. (dkt. 26) ¶ 17.

In general, a judgment in a class suit, including a judgment based on settlement of a class claim, binds members of the class. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373-74 (1996); Cooper v. Fed. Reserve Bank, 467 U.S. 867, 874 (1984); Hansberry v. Lee, 311 U.S. 32, 41 (1940). Indeed, the "central purpose of each of the various forms of class action is to establish a judgment that will bind not only the representative parties but also all nonparticipating members of the class certified by the court." 18A Wright et al., Federal Practice and Procedure: Jurisdiction § 4455, at 448 (2d ed. 2002).

However, for a class judgment to bind an absent class member, due process requires that the absent class members receive adequate notice. Richards v. Jefferson County, Ala., 517 U.S. 793, 799-802 (1996); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998); Besinga v. United States, 923 F.2d 133, 137 (9th Cir. 1991). The court approving a class settlement determines in the first instance whether due process has been satisfied. See Fed. R. Civ. P. 23.

In In re Wachovia Corp., 2011 WL 1877630, at \*8, Judge Fogel granted final

4

approval of a class action settlement involving all persons who entered into Pick-a-Payment loans issued by Wachovia or World's Savings between August 1, 2003, and December 31, 2008.[3] The class action claims were based on violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*, and various state laws involving claims that "the relevant loan documents failed to make adequate disclosures regarding the certainty of negative amortization, the actual payment schedules, the interest rates on which these schedules were based, and the full terms of the parties' legal obligations." Id., at *1.

Due process does not require that a class member actually receive notice, so long as the notice afforded was "the best notice practicable under the circumstances." Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1486 (D.C. Cir. 1992) (quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974)); see also Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56-57 (1st Cir. 2004). Plaintiff does not identify any shortcomings in the notice scheme, or suggest what could or should have been done differently. The Court agrees with the certifying court that the notice provided to class members was adequate. See In re Wachovia Corp., 2011 WL 1877630, at *5 (describing notice).

Accordingly, Plaintiff does not have a likelihood of success on the merits on his claims involving the origination of the loan, including Plaintiff's first (fraud in the origination of the loan) and fifth (rescission) claims, and the portions of Plaintiff's sixth (UCL) and seventh (UDAP) claims that involve the origination of the loan.

### b. HOLA Preemption

Defendant also argues that many of Plaintiff's claims are preempted by HOLA. See Defendant's Response at 6-10. Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA and the Office of Thrift Supervision (OTS) regulations that interpret it were a "radical and comprehensive response to the inadequacies of the existing state system" and "so pervasive as to leave no room for

---

[3] Plaintiff's loan date was February 29, 2008. FAC ¶ 15.

5

state regulatory control." Id. (internal quotation marks omitted).  The OTS regulations explain that OTS "occupies the entire field of lending regulation for federal savings associations," and establish a framework for determining whether a state law is preempted. See 12 C.F.R. § 560.2(a), (b).

OTS lists certain state laws that are preempted, including "state laws purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F. R. § 560.2(b)(10).  If the state law is one of the enumerated types, "the analysis will end there; the law is preempted." Silvas, 514 F.3d at 1005.  If it is not, then the court is to determine "whether the law affects lending." Id. (internal quotation marks omitted).  If it does, the law is presumed to be preempted, subject to the exceptions of 12 C.F.R. § 560.2(c). Id.  That section provides:

> (c) State laws that are not preempted.  State laws of the following types are not preempted to the extent that they only <u>incidentally affect</u> the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
>     (1) Contract and commercial law;
>     (2) Real property law;
>     (3) Homestead laws specified in 12 U.S.C. 1462a(f);
>     (4) Tort law;
>     (5) Criminal law; and
>     (6) Any other law that OTS, upon review, finds:
>         (i) Furthers a vital state interest; and
>         (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 561.2(c) (emphasis added).  Courts are to focus not on the nature of the cause of action, but on the "functional effect upon lending operations of maintaining the cause of action." See Naulty v. GreenPoint Mortg. Funding, Inc., No. C 09-1542 MHP, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009).

The first two categories of claims that Defendant asserts are preempted involve the origination of the loan and underwriting procedures, which includes Plaintiff's first (fraud in the origination of the loan) and fifth (rescission) claims, and relevant portions of Plaintiff's sixth (UCL), seventh (UDAP), and eighth (negligence) claims. See Defendant's Response at 7-9.  In addition to these claims being barred by *res judicata* as discussed above, they are

6

also preempted because they involve the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F. R. § 560.2(b)(10).

Next, Defendants argue that all allegations regarding loan modification review are preempted by HOLA because loan modification involves the "[p]rocessing, origination [and] sale" of mortgages.  Defendant's Response at 9-10.  This argument overreaches, as the language Defendant quotes pertains to "state <u>laws</u> purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase of . . . mortgages," 12 C.F.R. § 561.2(b)(10) (emphasis added), not to <u>allegations</u> that touch on such subjects.  Plaintiff's claims—under the UCL and breach of the implied covenant—are based on contract, tort, and, at least arguably in the case of the UCL, laws furthering a vital state interest.  See 12 C.F.R. § 561.2(c).  Such laws are not preempted if they only incidentally affect lending.  Id.  "Courts have . . . interpreted <u>Silvas</u> to not preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings, but only those that impose new requirements on the lender."  Rumbaua v. Wells Fargo Bank, N.A., No. C 11-1998 SC, 2011 WL 3740828, at *7 (N.D. Cal. Aug. 25, 2011).

Where Plaintiff's claims have centered on a bank's failure to make "adequate disclosures of fees, interest rates, or other loan terms," or "inadequate notice of various rights and procedures during the foreclosure process," those claims have been preempted because they "would effectively impose requirements that banks include specific information in loan documents or provide specific notices during foreclosure."  See DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390-LHK, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011).  But a claim is not preempted where plaintiffs challenge "defendant's general conduct of stalling [and] avoiding his requests . . ., not the substance of its lending practices such as terms of credit, disclosures, or advertising," because the state-law claims would only incidentally affecting lending operations.  Avila v. Wells Fargo Bank, No. C 12-01237 WHA, 2012 WL 2953117, at *11 (N.D. Cal. July 19, 2012).

Here, Plaintiff's fourth (breach of the implied covenant), sixth (UCL), seventh (UDAP), eighth (negligence), and ninth (negligent misrepresentation) claims, to the extent

7

1 that they involve loan modification, do not seek to impose additional requirements on
2 Defendant, nor depend on the contention that all homeowners are entitled to loan
3 modifications. Rather, as in Avila, Plaintiff alleges that his attempts to obtain a loan
4 modification were unsuccessful due to unfair and deceptive business practices by
5 Defendants, including "claiming that [he] did not comply with Defendants' requests and
6 transferring [him] to different departments in order to void [his] legitimate loan modification
7 requests." FAC ¶ 144. To the extent Plaintiff's claims involving loan modification are based
8 on allegations of Defendant's misconduct in connection with the loan process, they are not
9 preempted.

### c. UCL claim

Section 17200, California's Unfair Competition Law ("UCL"), prohibits any "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the framers of the UCL expressed the three categories of prohibited competition in the disjunctive, "each prong of the UCL is a separate and distinct theory of liability," each offering "an independent basis for relief." Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiffs proceeding under the "unlawful" prong must demonstrate that the defendant's conduct violated some existing federal, state, or local law. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). The next UCL category concerns "unfair" business acts or practices. Although courts have developed multiple definitions to describe "unfair" practices, the one which has been recognized by the Ninth Circuit requires the alleged business act or practice to be "immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). Finally, under the "fraudulent" theory, the challenged business acts or practices must have involved a misrepresentation that is likely to deceive members of the public. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151-52 (9th Cir. 2008). Additionally, the "fraudulent" prong requires plaintiffs to have "actually relied" on the alleged misrepresentation to their detriment. In re Tobacco II Cases, 46 Cal. 4th 6, 326 (2009).

8

### 1. Unlawful

Plaintiff bases his "unlawful" claim on several California Civil Code violations. See FAC ¶¶ 103-47. The violations of sections 1572 (actual fraud-omissions), 1573 (constructive fraud by omission), and 1710 (deceit) are barred by *res judicata* as they involve the origination of the loan. Plaintiff's section 1920(a) and 1921(b) claims, which impose additional requirements on Defendant during the loan process, are preempted by HOLA.

The only remaining claim under this prong is for a violation of section 2923.5. However, as Defendant correctly notes, section 2923.5 only applies to mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007. See Defendant's Response at 4; Cal. Civ. Code § 2923.5(i). Because Plaintiff's Deed of Trust was recorded on February 29, 2008, Defendants were not required to comply with this section, and Plaintiff does not have a likelihood of success on the merits of this claim.

### 2. Unfair

As discussed above, the unfair business practices relating to the origination of the loan are barred by *res judicata*. Plaintiff also alleges unfair business practices by Defendants in relation to the loan modification process, based on (1) Defendant's initial representations about the loan modification procedure, and (2) Defendant's conduct during the loan modification application process. FAC ¶¶ 139-44.[4]

#### a. Defendant's initial representations about the loan modification

Plaintiff's allegations of reliance on Defendant's initial representations are problematic. Plaintiff does not allege that when he inquired about a loan modification, Defendant misrepresented to him that he would qualify for a loan modification—only that Defendant told him it could not offer a loan modification at that time because he was current on his payments. Id. ¶¶ 139-40. Defendant arguably did exactly what it told Plaintiff; after Plaintiff became delinquent, Defendant processed Plaintiff's loan modification application.

---

[4] Plaintiff alleges the unfair business practices under a cause of action for Unfair and Deceptive Business Act Practices (UDAP). California's UDAP is the UCL, and thus the Court will analyze these allegations under the unfair prong of the UCL.

9

1  Id. Plaintiff's application was denied, but Defendant never guaranteed a loan modification in
2  the first place.

### b. Defendant's conduct during the loan modification process

Plaintiff also asserts that Defendant committed unfair business practices by "claiming that [he] did not comply with Defendants' requests and transferring [him] to different departments in order to void [his] legitimate loan modification requests." Id. ¶ 144. Defendant mailed Plaintiff a letter on July 4, 2012, requesting that Plaintiff provide, by July 19, 2012, additional information and documents needed to process the application. See Thomas Decl. (dkt. 33-1), Exh. A. When Defendant allegedly did not receive the requested information, it mailed a denial letter to Plaintiff on July 20, 2012, stating that his modification was denied because Defendant did not receive the requested information. See Thomas Decl., Ex B.

In his Reply, Plaintiff states that he hired SHS to assist him in getting a loan modification. Plaintiff's Reply at 3. In an attached declaration, Sandra Benavidez of SHS states that her department contacted Defendant on June 28, 2012, at which time an employee of Defendant, Preston Abel, informed SHS that some documents were missing from Plaintiff's application. Benavidez Decl. (dkt. 36-1) ¶ 2. SHS submitted the requested documents by mail on June 29, 2012. Id. ¶ 3. On July 7, 2012, SHS contacted Defendant again, and was told Mr. Abel would call SHS back the same day; Mr. Abel did not contact SHS. Id. ¶ 4. SHS spoke with another employee of Defendant's on July 24, 2012 about Plaintiff's missing documents, and submitted the documents the same day to Mr. Abel by email. Id. ¶ 6. Finally, on August 8, 2012, SHS spoke to another employee of Defendant's, who informed SHS that Mr. Abel would be in contact to discuss Plaintiff's account status. Id. ¶ 7. However, Mr. Abel did not return the call. Id. ¶ 8.

As pleaded, Plaintiff does not have standing on his claims involving Defendant's conduct during the loan modification process. To have standing under the UCL, Plaintiff must allege that he "suffered injury in fact and has lose money or property as a result of the unfair competition." See Cal. Bus. & Prof. Code § 17204 (emphasis added); see also

Degelmann v. Advanced Med. Optics, Inc., 659 F.3d 835, 839 (9th Cir. 2011). Plaintiff points to no clause in his loan agreement that gives him the right to be considered for or receive a loan modification, or that obliges Defendant to consider him for a loan modification. Since Defendant had no duty to consider Plaintiff's loan modification, Defendant's failure to properly consider Plaintiff's loan modification application was not the cause of the imminent foreclosure of Plaintiff's home; rather, Plaintiff's default on his mortgage caused the imminent foreclosure. See Solomon v. Aurora Loan Servs. LLC, No. CIV. 2:12-209 WBS KJN, 2012 WL 257759, at *5, 7 (E.D. Cal. July 3, 2012) (finding no standing when plaintiff had no right to a loan modification and was already in default on her mortgage because "[i]t was [plaintiff's] default that caused the foreclosure that caused her injury, not defendant's denial of a home loan modification"). Accordingly, Plaintiff does not have a likelihood of success on the merits on his UCL claim as to his original loan agreement.

However, at the motion hearing, Plaintiff's counsel represented that she could amend the complaint to state a viable claim under the UCL based on Defendant's obligations under the class action settlement agreement in In re Wachovia Corp.. That agreement arguably obligated Defendant to consider class members for a new loan modification program, Mortgage Assistance Program 2 (MAP2R), if the borrower does not qualify for a HAMP modification,[5] and the borrower's "NPV test" is positive.[6] See In re Wachovia Corp.

---

[5] The exact language provides that class members "who do not qualify for or elect a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(3) and (5) of this Agreement. The following process shall commence upon receipt of the documents described in Section VI(E)(7) and subsequent verification that the Settlement Class Member's DTI is above thirty-one percent (31%)." Settlement Agreement, Section VI ¶ (E)(2) (emphasis added).

[6] "'NPV Test' means the calculation and comparison of the net present value ('NPV') of conducting a modification of a Pick-a-Payment mortgage loan versus the NPV of not conducting a modification of the same Pick-a-Payment mortgage loan. The NPV formula has been explained to Lead Class Counsel and will be disclosed to the Court, *in camera*, if the Court requests. If the NPV of the modification would be greater than the NPV if there was no modification, the result is deemed 'positive.' If the NPV of the modification would be less than the NPV if there was no modification, the result is deemed 'negative.'" Settlement Agreement ¶ 1.47.

11

Settlement Agreement, Section VI ¶¶ E(2)-(10). The Court will allow Plaintiff to amend his complaint to address this issue.

### (3) Fraudulent

As discussed above, Plaintiff's claims under the fraudulent prong of UCL are barred by *res judicata* because they involve the origination of the loan. See FAC ¶¶ 116-23.

### e. Breach of contract

Plaintiff's breach of contract claim involves the Servicer Participation Agreement ("SPA") between Defendant and Fannie Mae (acting as an agent of the federal government), in which Defendant agreed to apply the HAMP criteria to all of the loans it services. FAC ¶¶ 73-79. These claims are invalid, however, because a plaintiff may not sue to enforce a HAMP modification agreement under a third party beneficiary theory. In Wright v. Bank of Am., N.A., No. CV 10-1723 JF (HRL), 2010 WL 2889117, at *3-4 (N.D. Cal. July 22, 2010), the court held that a plaintiff could not sustain a breach of contract claim as a third party beneficiary to the HAMP contract between a defendant bank and Fannie Mae. Third parties are often only incidental beneficiaries rather than intended beneficiaries of government contracts. Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 2000). The court determined that "[t]he HAMP contract between Defendants and Fannie Mae obviously was entered into with the intent of aiding home-loan borrowers, but it is equally obvious that the contract does not secure an enforceable right for non-parties. A loan modification is never guaranteed." Wright, 2010 WL 2889117, at *4. Thus, Plaintiff does not have a likelihood of success on the merits of his breach of contract claim.

### f. Breach of implied covenant of good faith and fair dealing

Plaintiff's breach of the implied covenant claim involves Defendant's conduct during Plaintiff's attempts at loan modification. See FAC ¶¶ 80-93 (including "claiming Plaintiff did not comply with Defendants' requests to provide documentation" and "transferring Plaintiff to different departments" to avoid Plaintiff's requests). "The implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the

12

specific terms of [the parties'] agreement." Perez v. Wells Fargo Bank, N.A., No. C-11-02279 JCS, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011) (internal quotation marks omitted). Importantly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." Id.

Here, Plaintiff does not point to any provision in his loan agreement that required Defendant to consider Plaintiff for a loan modification, and as a result does not have a likelihood of success on his claim for breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 90-93. However, Plaintiff's counsel represented at the motion hearing that she could amend the complaint to state an implied covenant claim based on the settlement agreement in In re Wachovia Corp.. The Court will allow Plaintiff to submit an amended complaint to address this issue as well.

### g.   Negligence and Negligent Misrepresentation

Plaintiff also argues that Defendant is liable for negligence in the origination of the loan, and negligence and negligent misrepresentation for the actions surrounding loan modification. FAC ¶¶ 148-74. As with any negligence claim, the tort of negligent misrepresentation requires that Plaintiff allege a duty of care. See Eddy v. Sharp, 199 Cal. App. 3d 858, 864 (1988). Plaintiff alleges no duty of care, and it would be difficult to plausibly allege such a duty to the extent that Defendant was only acting as a traditional lender. See DeLeon, 2011 WL 311376, at *9 (citing Nymark v. Hart Federal Savings & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991) (financial institution does not owe its borrower a duty of care unless it "'actively participates in the financed enterprise beyond the domain of the usual money lender.'")). No facts alleged by Plaintiff allude to Defendant acting as anything but a traditional lender. Accordingly, Plaintiff does not have a likelihood of success on the merits of these claims.

### h.   RESPA

Plaintiff also alleges a violation of RESPA, FAC ¶¶ 57-71, which only affords the following types of relief for individual plaintiffs: "(A) any actual damages to the borrower as

a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). Injunctive relief is not a potential remedy for a RESPA violation. See id. Several courts in this district have therefore denied preliminary injunctions to plaintiffs claiming RESPA violations. See, e.g., Aniel v. GMAC Mortg., LLC, No. C 12-04201 SBA, 2012 WL 4466565, at *8 (N.D. Cal. Sept. 26, 2012); Gray v. Central Mortg. Co., No. C 10-00483 RS, 2010 WL 1526451, at *3 (N.D. Cal. Apr. 14, 2010); Chung v. NBGI, Inc., No. C 09-04878 MHP, 2010 WL 841297, at *3 (N.D. Cal. Mar. 10, 2010). The Court agrees; this claim does not provide a basis for injunctive relief.

### i.  **Quiet Title**

Plaintiff seeks to quiet title as of October 31, 2011, the date of the Notice of Default. FAC ¶ 182. Plaintiff alleges that the sale referenced in the Deed of Trust "is of no force and effect because Defendants' failure to comply with the provisions set forth in California law." Id. ¶ 184. Plaintiff does not specify a provision of California law on which he basis his quiet title claim, but the Court assumes, and Defendant believes, that one law Plaintiff intended to cite is section 2924 of the California Civil Code. See Defendant's MTD FAC (dkt. 15) at 20-21. Section 2924(a)(1) provides: "The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record . . . a notice of default."

Here, the Notice of Default stated that NDEx was "acting as Agent for the Trustee or Beneficiary." RJN, Exh. B, at 2. Further, NDEx was substituted as trustee on November 14, 2011, MTD RJN (dkt. 17), Exh. F, making NDEx not only an agent of the beneficiary, but also the substituted trustee, which is "deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents." Cal. Civ. Code § 2934a(d); see also Wolf v. Wells Fargo Bank, N.A., No. C 11-01337 WHA, 2011 WL 4595012, at *3-4 (N.D. Cal. Oct. 4, 2011) (denying plaintiff's quiet title claim that was based on an argument that NDEx was not substituted as trustee before plaintiff received the notice of default and thus had no authority to initiate foreclosure). Because Defendant's procedure appears to have

14

complied with section 2924, Plaintiff's quiet title action necessarily fails.

### 2. Remaining Winter factors

The remaining Winter factors weigh in favor of granting the injunction. Plaintiff will suffer irreparable harm in the absence of preliminary relief because Defendants will foreclose on his primary residence. See TRO MPA at 10; Jackmon v. Am.'s Servicing Co., No. C 11-03884 CRB, 2011 WL 3667478, at *3 (N.D. Cal. Aug. 22, 2011) (finding irreparable harm because "is undisputed that plaintiffs are harmed if they are [wrongfully] evicted from their homes or undergo a foreclosure sale"). By contrast, Defendants will suffer no significant harm if an injunction is granted, and so the balance of the hardships tips in favor of Plaintiff. Further, the public interest is served by giving Plaintiff an opportunity to pursue his claims before his home is sold. See Jackmon, 2011 WL 3667478, at *4.

Given the strength of the remaining Winter factors, the Court does not wish to remove Plaintiff from his home if he could amend the complaint to allege a cause of action that would support a preliminary injunction. At the motion hearing, Plaintiff's counsel stated that she could amend the complaint to state a valid claim against Defendant, and Defendant stipulated to withhold foreclosure on Plaintiff's house until Plaintiff submits the amended complaint and the Court holds another preliminary injunction hearing. Therefore, the Court will allow Plaintiff to amend his complaint as discussed above.

### B. Leave to amend and subsequent briefing schedule

Accordingly, the Court DIRECTS Plaintiff to file an amended complaint by November 14, 2012. Plaintiff may then file a motion for preliminary injunction by November 28, 2012. A hearing will be held on the motion for preliminary injunction on December 28, 2012. Defendant's opposition will be due on December 14, 2012, and Plaintiff's reply, if any, by December 21, 2012.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for a preliminary

//

//

1 injunction without prejudice.

2 **IT IS SO ORDERED**.

4 Dated: October 25, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE