1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   ERIC ROUSSEL,                          No. C 12-04057 CRB
12            Plaintiff,                     **ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTION TO
13       v.                                  DISMISS; DENYING MOTION FOR
                                             PRELIMINARY INJUNCTION**
14   WELLS FARGO BANK, ET AL.,
15            Defendants.
                                    /
16

17        In late October, the Court denied Plaintiff's Motion for Preliminary Injunction in this

18   mortgage case, issuing an order that described at length its concerns about the First Amended

19   Complaint's (FAC's) many causes of action.  See October Order (dkt. 43).  Because

20   Plaintiff's counsel had represented at the motion hearing that she could amend the complaint

21   to state a claim based on the class action settlement in In re Wachovia Corp., the Court

22   permitted Plaintiff to amend the complaint.  Id. at 11, 13.  Moreover, Defendant stipulated to

23   withhold foreclosure on Plaintiff's home until the Court held another preliminary injunction

24   hearing.  Id. at 15.  Plaintiff has now filed a Second Amended Complaint, see SAC (dkt. 45),

25   and moved for preliminary injunction, see MPI (dkt. 46), and Defendant has moved to

26   dismiss, see MTD (dkt. 47).  As explained below, the Court grants in part and denies in part

27   the Motion to Dismiss and denies the Motion for Preliminary Injunction.

28   //

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

## I.     BACKGROUND

The background of this case is set forth at length in the October Order, and so the Court only includes a summary here.  Plaintiff obtained an adjustable rate mortgage in an amount of $939,704.00 from World Savings Bank on February 29, 2008.  SAC ¶ 16. Plaintiff's loan was included in the loans that are subject to an investigation by the California Department of Justice, and about which Wells Fargo entered into a settlement with the California Attorney General's Office.  Id. ¶ 17.[1]

Plaintiff was forced to seek a loan modification beginning in September 2010.  Id. ¶ 19.  Wells Fargo told him that it was unable to offer him any loan workout options because he was current on his mortgage payment.  Id.  "Relying on Wells's representations," Plaintiff became delinquent on his mortgage around November 2010.  Id.  Plaintiff then applied for a loan modification on multiple occasions, but Wells Fargo denied him.  Id. ¶ 20.  On October 31, 2011, Well Fargo, through trustee NDEX, recorded a notice of default.  Id. ¶ 21.

Plaintiff brought suit in June of 2012, and Defendant removed to this Court.  See Not. of Removal (dkt. 1).  Plaintiff filed the FAC in August 2012.  See FAC (dkt. 10).  The FAC included causes of action for: (1) fraud in the origination of the loan; (2) violation of the Real Estate Settlement Procedures Act (RESPA); (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) rescission; (6) violation of California Business & Professions Code §§ 17200, *et seq*. (UCL), (7) violation of Unfair and Deceptive Business Act Practices (UDAP); (8) negligence; (9) negligent misrepresentation; (10) declaratory relief; and (11) quiet title.  See generally id.  Plaintiff filed an application for a TRO and Order to Show Cause (TRO) on September 28, 2012 (dkt. 26), predicated on the first and sixth cases of action, and this Court granted the TRO on the same day (dkt. 29).  Plaintiff then sought a preliminary injunction.  See generally TRO.[2]

The Court denied the preliminary injunction, explaining that the settlement had a *res judicata* effect on the claims involving origination of the loan, and that other claims were

---

[1] Wachovia purchased World Savings Bank, and Wells Fargo acquired Wachovia.  Id.

[2]Plaintiff did not file a separate motion for a preliminary injunction.

2

preempted by the Home Owners' Loan Act (HOLA).  See October Order at 4-8.  The Court held that Plaintiff was not likely to succeed under the UCL's unlawful or fraudulent prongs, but that the Court would allow Plaintiff to amend the complaint to allege that Defendant's actions were unfair in light of the In re Wachovia Corp. settlement.  Id. at 11-12.  The Court also allowed Plaintiff to amend to allege a claim for breach of the implied covenant of good faith and fair dealing in light of the In re Wachovia Corp. settlement.  Id. at 13.  The Court found that Plaintiff was unlikely to succeed on the merits of the negligence and negligent misrepresentation claims because he had not plausibly alleged a duty of care.  Id.  The Court did not discuss Plaintiff's RESPA claim at length because it is not a basis for a preliminary injunction.  Id. at 13-14.

Plaintiff has now amended.  See generally SAC.  Plaintiff again moves for preliminary injunction, see generally MPI, and Defendant moves to dismiss, see generally MTD.

## II.    LEGAL STANDARD[3]

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Dismissal is proper where a cause of action fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Rule calls for sufficient factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).  A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment.  Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

## III.   DISCUSSION

The SAC includes causes of action for (A) violation of RESPA; (B) breach of the

---

[3] This section provides the legal standard for a motion to dismiss only, as this Order does not reach the preliminary injunction motion.

implied covenant of good faith and fair dealing; (C) negligence and negligent

misrepresentation; and (D) violation of the UCL.  See generally SAC.  This Order address

each cause of action in turn.

**A.       RESPA Claim**

Plaintiff alleges that Defendant violated RESPA by failing to timely respond to

Plaintiff's qualified written request, or QWR.  Id. ¶¶ 25-30.  That purported QWR is attached

to the SAC and states, among other things, that it is "a qualified written request (QWR),

pursuant to the Real Estate Settlement and Procedures Act (RESPA)."  SAC Ex. C at 1.  It

states that the inquiry is being made for Plaintiff

> to become appraised of the basis on which the particular amounts are claimed, what
> assignments or transfers have been made with respect to the servicing of the loan in
> order to identify the proper holder of the note, if the note has been securitized,
> whether any related security is registered with the Securities and Exchange
> Commission, and ultimately whether you have legal standing to make a claim . . .
> against [Plaintiff].

Id. It lists ten types of documents sought, including an "Escrow accounting of payments."

Id. at 2.  It goes on to state: "I suspect violations of the RESPA or of the TILA in the

processing of certain fees associated with my client's Loan and Loan Documentation.  I am

also disputing the current balance of my Clients [sic] loan."  Id.  It requests "a specific

breakdown of all the fees and an explanation of why such charges were incurred," noting that

Plaintiff had not been provided a history of the amounts Defendant had received from him.

Id.  And it seeks "any and all documents supporting your standing to effectuate collection

and enforcement efforts, including . . . Escrow accounting of payments . . . as well as a

detailed history of all receipts and payments handled in the course of your (or your

predecessors') loan servicing."  Id.

Plaintiff alleges that he sent the QWR to Wells Fargo on April 2, 2012, and that Wells

Fargo never responded – either by providing a written response acknowledging receipt, per

12 U.S.C. § 2605(e)(1)(A), or by conducting an investigation and providing a written

United States District Court
For the Northern District of California

1  explanation or clarification, per 12 U.S.C. § 2605(e)(2)(C).[4]  SAC ¶¶ 29, 31.  He further

2  alleges that he suffered damages, including statutory damages, due to Defendant's actions.

3  Id. ¶ 34.  He alleges that, by failing to provide him with the requested information, Defendant

4  "caused him to pay more than was necessary on his loan and to incur additional costs in

5  repairing his credit."  Id. ¶ 32.  Defendant argues that this fails to state a claim both because

6  the letter is not really a QWR and because Plaintiff fails to adequately allege damages.

### 1.    The Letter is a QWR

8  Defendant argues that Plaintiff fails to state a claim under RESPA because his "form

9  letter does not constitute a 'QWR.'"  MTD at 4.  Defendant asserts that the letter is really

10  seeking information regarding the validity of the loan, and not its servicing.  Id.  Although

11  Defendant concedes that the letter also references RESPA and speaks of violations in

12  connection with the processing of certain fees, Defendant claims that "this request was not

13  sufficiently specific to allow for, or require, a response by Wells Fargo," and offered no

14  reasons for Plaintiff's dispute of certain fees.  Id. at 5 (citing Boatright v. Aurora Loan

15  Servs., No. 12-09 EDL, 2012 U.S. Dist. LEXIS 94801, at *40-41 (requiring that a party give

16  reasons for claiming that an account is in error)).

17  The Court finds that the letter qualifies as a QWR.  First, there is no doubt that it was

18  intended as a QWR.  The letter states in bold type on the front page, "This letter is a qualified

19  written request (QWR)" and "This letter constitutes a 'qualified written request.'"  SAC Ex.

20  C at 1.  Any servicer who received it would have been on notice that it triggered certain

21  deadlines under RESPA.  Second, although the letter did make a number of inquiries that

22  seem to go to the validity of the loan, it also made a number of inquiries about payments, and

23  specifically referenced servicing at least twice.  Id. at 2 (defining servicing under 12 U.S.C. §

24  2605(i)(3), and requesting a "detailed history of all receipts and payments handled in the

25  course of . . . loan servicing.").  Third, and contrary to Boatright, the statute does not require

26  that a borrower include both the reasons he believes an account is in error and sufficient

27

28  _____

   [4] The SAC also asserts that Defendant was prohibited from providing information regarding any
   overdue payments owed to any consumer reporting agency, per 12 U.S.C. § 2605(e)(3), id. ¶ 31, but it
   never actually alleges that Defendant did so, see id. ¶ 33.

United States District Court
For the Northern District of California

detail regarding the information sought; the statute is in the disjunctive, allowing for either reasons or detail.  See 12 U.S.C. § 2605(e); Tamburri v. Suntrust Mortgage, Inc., No. 11-2899 EMC, 2011 WL 6294472, at *7 n.8 (N.D. Cal. Dec. 15, 2011) (holding same).  Defendant seems to concede that in its Reply brief, arguing that the letter did not include enough detail.  See Reply (dkt. 56) at 2.  Not so; although it did not identify the "certain fees" at issue, it was only obligated the provide detail "regarding the information sought," see 12 U.S.C. § 2605(e); Tamburri, 2011 WL 6294472, at *7 n.8, and it did so, seeking ten discrete categories of documents and an accounting of all payments received, see SAC Ex. C at 2.  If the servicer had questions about the request, or if the requested documents could not have been made available, Defendant could have said so; silence was not an appropriate response.  See 12 U.S.C. § 2605(e)(2)(C) (one acceptable response is informing the borrower "why the information requested is unavailable").

Judge Chen reached the same conclusion in Tamburri, id. at *7, in which a letter requested "'documents and documentation supporting [] collection and enforcement efforts,' including 'documents in support of the enforcement of Ms. Tamburri's Promissory Note . . . and the Deed of Trust.'"  Judge Chen concluded that "While some of these requests appear to go to the validity, rather than the servicing, of the loan, they also arguably request information as to how the servicer has handled her account."  Id.  Here, too, although the letter concerned validity, it also concerned servicing.  Accordingly, it is a QWR.

### 2.        Plaintiff Adequately Alleges Damages

Defendant next argues that Plaintiff fails to state a claim under RESPA because he has not explained how Defendant's failure to respond to the QWR resulted in his having to pay more than was necessary on his loan and to pay additional costs to repair his credit."  Reply at 5.  However, it at least seems plausible, at this motion to dismiss phase, that if in fact there was something amiss with Plaintiff's loan (and the settlement in In re Wachovia suggests that there could have been), it damaged Plaintiff to not learn about it in a response to his QWR.  Plaintiff has adequately alleged damages, and so the Court concludes that he has stated a claim under RESPA.

United States District Court
For the Northern District of California

The Court notes that a RESPA claim is <u>not</u> a basis for granting a preliminary injunction, as it has already explained.  <u>See</u> October Order at 13-14 (explaining that injunctive relief is not a potential remedy for a RESPA violation, per 12 U.S.C. § 2605(f)(1), and that several other district courts have therefore denied preliminary injunctions based on RESPA violations).

## B.       Breach of the Implied Covenant Claim

Plaintiff's breach of the implied covenant claim is based on the terms of the Loan. <u>See</u> SAC ¶ 39.  Plaintiff alleges that he has "persistently attempted to fulfill all of his obligations under the agreement with Defendant, but his efforts have been made impossible due to Defendant's refusal to properly and legitimately review Plaintiff's loan modification applications." <u>Id.</u> ¶ 45.  He further alleges that Defendant "Willfully and/or negligently breached the implied covenant of good faith and fair dealing with Plaintiff when Wells instructed Plaintiff that it could not review Plaintiff for a loan modification unless he was in default, therefore instructing Plaintiff to default on his obligations under the terms of the loan agreement." <u>Id.</u> ¶ 46.  These allegations are no different from the allegations in the FAC that the Court found unlikely to succeed.  <u>See</u> FAC ¶¶ 80-93.

"The implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." <u>Perez v. Wells Fargo Bank, N.A.</u>, No. 11-02279 JCS, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011) (internal quotation marks omitted).  Importantly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." <u>Id.</u>

Plaintiff still does not point to any provision in his loan agreement that required Defendant to even consider Plaintiff for a loan modification.  To the contrary, the purpose of the promissory note is to set out the particular, enforceable terms of the loan.  In addition, to the extent that Plaintiff's claim is based not on any obligation to grant or consider a loan modification, but on an obligation to process a loan modification in a certain way, <u>see</u> Opp'n

United States District Court
For the Northern District of California

at 4 ("It is not for Defendant's failure to provide Plaintiff with a loan modification, but for Defendant's actions, and failures to act, during the modification process"), Plaintiff does not point to any specific contractual term governing Defendant's obligations during the modification process either.

Accordingly, Plaintiff has failed to state a claim for breach of the implied covenant, and that claim is dismissed.

### C.    Negligence and Negligent Misrepresentation Claims

Plaintiff includes claims for negligence and negligent misrepresentation in the SAC. See SAC ¶¶ 51-71.  The negligence claim is premised on Well Fargo's instructing Plaintiff to default on his loan and then failing to "legitimately review Plaintiffs' loan modification, as Plaintiff is informed and believes he would have qualified for a loan modification," id. ¶ 62, and the negligent misrepresentation claim is premised on the "false representation" that Plaintiff should "default on his loan in order to receive loan assistance," id. ¶ 65.

Defendant argues that Plaintiff fails to state a claim as to both negligence and negligent misrepresentation because Plaintiff fails to plausibly allege a duty of care, because Plaintiff concedes that Wells Fargo reviewed and denied his loan modification at least twice, even attaching a denial letter to the SAC, and because informing Plaintiff that he was not eligible for loan assistance unless he was in default is not an "instruction" but an accurate statement of fact.  See MTD at 7.  Defendant also argues that Plaintiff cannot plead an intent to induce reliance, or justifiable reliance, because "it is unreasonable for plaintiff to assume the can manipulate the terms of his loan by intentionally breaching the agreed upon terms of the promissory note."  Id. at 8.

Above all, the Court remains unconvinced that Wells Fargo was acting as anything other than a traditional lender in this transaction.  As with any negligence claim, the tort of negligent misrepresentation requires that Plaintiff allege a duty of care.  See Eddy v. Sharp, 199 Cal. App. 3d 858, 864 (1988).  The Court explained in the October Order that "it would be difficult to plausibly allege such a duty to the extent that Defendant was only acting as a traditional lender."  See October Order at 13 (citing DeLeon, 2010 WL 4285006, at *9

United States District Court
For the Northern District of California

(citing <u>Nymark v. Hart Federal Savings & Loan Assn.</u>, 231 Cal. App. 3d 1089, 1096 (1991) (financial institution does not owe its borrower a duty of care unless it "'actively participates in the financed enterprise beyond the domain of the usual money lender.'")).

Here, although Plaintiff applies the appropriate six-factor test for whether a financial institution owes a duty of care, <u>see</u> Opp'n at 6 (citing <u>Connor v. Great W. Sav. & Loan Ass'n</u>, 69 Cal. 2d 850, 865 (1968))[5], and even cites to some federal authority finding that the test had been met, <u>see, e.g.</u>, <u>Garcia v. Ocwen Loan Serv., LLC</u>, No. 10-290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010), its effort falls short.  In <u>Garcia</u>, Judge Trumbull held that "by asking Plaintiff to submit supporting documentation, Defendant undertook the activity of processing Plaintiff's loan modification request, Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out that task." <u>Id.</u> at *4.  But that is not the harm at issue here.  Plaintiff's negligence claim is not really that Defendant was sloppy in routing his application materials, it is that Defendant must not have "legitimately review[ed]" his application, or else he would have qualified for a modification.  See SAC ¶ 62.

As Judge Burns held in <u>Carpenter v. Bank of America, N.A.</u>, No. 12-973 LAB, 2013 WL 28772, at *2 (S.D. Cal. Jan. 2, 2013), "the duty of care identified in <u>Garcia</u> was really a duty to properly route loan modification paperwork. . . . It was not a duty to give the distressed homeowner the answer he wants with respect to a home modification."  As in <u>Carpenter</u>, 2013 WL 28772, at *3, a plaintiff's argument that "[h]ad Defendant exercised ordinary care and skill, it would not have denied Plaintiff's modification request" is "a policy disagreement with [the defendant]; it doesn't support the allegation that [the defendant] breached a duty of care it owed to him."  Plaintiff's allegation that he "received no explanation for the denial . . . whatsoever" is further undermined by the denial letter he attaches to the SAC, which provides an explanation.  See SAC Ex. D ("we are unable to offer you a Mortgage Assistance Plan Modification because . . . Excessive Forbearance of 31%

---

[5] This test includes: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." <u>Id.</u>

United States District Court
For the Northern District of California

1   cannot be reached.").  See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir.

2   1998) (Court is "not required to accept as true conclusory allegations which are contradicted

3   by documents referred to in the complaint.").

4          In addition, the SAC fails to plausibly allege that Defendant made a false

5   representation "when it instructed Plaintiff to then default on his loan in order to receive loan

6   assistance."  See SAC ¶ 65.  As an initial matter, the SAC states only that "Wells told

7   Plaintiff that it was unable to offer Plaintiff any loan workout options because Plaintiff was

8   current on his mortgage payment, id. ¶ 19, not that Defendant "instructed" Plaintiff to

9   default, but even so, Plaintiff does not explain what about the representation/instruction was

10  false.  Did Defendant in fact offer loan workout options to borrowers who were current on

11  their mortgages?  Plaintiff does not allege that.  Did Defendant tell Plaintiff that if he

12  defaulted, then he would be given a modification?  Plaintiff does not allege that either.  As

13  the Court held in the October Order, "Defendant arguably did exactly what it told Plaintiff;

14  after Plaintiff became delinquent, Defendant processed Plaintiff's loan modification

15  application.  Plaintiff's application was denied, but Defendant never guaranteed a loan

16  modification in the first place."  October Order at 9-10.

17         Because Defendant did not breach a duty of care, or make a misrepresentation,

18  Plaintiff fails to state a claim for negligence or negligent misrepresentation.

19         **D.    UCL Claim**

20         Plaintiff also includes a claim under the UCL.  The UCL  prohibits "any unlawful,

21  unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Because the

22  framers of the UCL expressed the three categories of prohibited competition in the

23  disjunctive, "each prong of the UCL is a separate and distinct theory of liability," each

24  offering "an independent basis for relief."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1127

25  (9th Cir. 2009).  Plaintiff here proceeds only under the unlawful and unfair prongs.  See SAC

26  ¶¶ 74-89.  Plaintiffs proceeding under the "unlawful" prong must demonstrate that the

27  defendant's conduct violated some existing federal, state, or local law.  Chabner v. United of

28  Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Although courts have developed

**United States District Court**
For the Northern District of California

multiple definitions to describe "unfair" practices, the one which has been recognized by the Ninth Circuit requires the alleged business act or practice to be "immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008).

### 1.   Unlawful

Plaintiff bases his "unlawful" claim on Defendant's alleged violation of California Civil Code section 1714 (negligence) and 1710 (negligent misrepresentation). SAC ¶ 75. Because the Court concludes that Plaintiff has not stated a claim for either negligence or negligent misrepresentation, the Court also concludes that Plaintiff has not stated a claim under the unlawful prong.

### 2.   Unfair

Plaintiff also alleges unfair business practices by Defendant because, "[p]ursuant to Wells's directions, Plaintiff became delinquent on his mortgage . . . applied for a loan modification," and "[a]fter approximately two or three months, Wells denied Plaintiff for a permanent loan modification." SAC ¶ 79. He applied again and was denied. Id. ¶ 80. He then hired a company, Secure Home Solutions, to submit a loan modification application on his behalf, and that "[s]ince this time Wells refuses to properly process Plaintiff's loan modification application and continues to charge Plaintiff with excessive interest." Id. ¶ 82. Plaintiff now alleges that "Wells was obligated and had a duty to consider Plaintiff for a Mortgage Assistance Program 2 ("MAP2R") having denied Plaintiff for a HAMP modification," id. ¶ 83, but that "Wells failed to consider Plaintiff for a MAP2R program after denying Plaintiff for a HAMP modification," id. ¶ 84.

This argument has some initial appeal. Per the SAC, the settlement agreement provides that "each Eligible Borrower shall first be considered for a HAMP modification. Eligible Borrowers who do not qualify for or elect not to accept a HAMP modification shall be considered for a MAP2R modification." SAC ¶ 77. The problem with this argument is that Plaintiff actually was considered for a MAP2R modification.

Defendant demonstrates in its briefing that Plaintiff's loan (as of January 30, 2012,

1   $1,040,289.94) exceeds the maximum allowable principal balance of HAMP ($729,750).

2   See MTD at 3.  Plaintiff does not dispute this point. Defendant then asserts that, "[a]s

3   plaintiff was not eligible for review under HAMP, he was reviewed under MAP2R."  Id.

4   Indeed, the denial letter attached to the SAC states "Final decision on the Mortgage

5   Assistance Plan Modification," and "you are not eligible for assistance under the Mortgage

6   Assistance Plan Modification."  SAC Ex. D.  Defendant further explains that "MAP2R

7   stands for the second revision of Wells Fargo's internal modification program 'Mortgage

8   Assistance Plan Modification,'" and notes that the settlement agreement provides that the

9   MAP2R modification reviews commenced on December 10, 2010.  MTD at 3-4 (citing

10  Settlement Agreement section VI ¶¶ E(2)-(10)).

11          Plaintiff in opposition asserts that he "disputes Defendant's claim, and argues that

12  Defendant never has, has refused and continues to refuse to review Plaintiff for the MAP2R

13  program as is required of it under the terms of the class action settlement."  Opp'n at 10.  But

14  Plaintiff's contention, however adamantly maintained, is belied by the document attached to

15  his complaint.  See Steckman, 143 F.3d at 1295-96 (Court "not required to accept as true

16  conclusory allegations which are contradicted by documents referred to in the complaint.").

17  Because Defendant appears to have complied with its obligations under the settlement

18  agreement, its conduct is not unfair under the UCL.

19          Accordingly, Plaintiff fails to state a claim as to the UCL.

20  **IV.   CONCLUSION**

21          For the foregoing reasons, the Court GRANTS in part Defendant's Motion to Dismiss,

22  as to all claims but the RESPA claim, and DENIES Plaintiff's Motion for Preliminary

23  Injunction, because the sole surviving claim, for violation of RESPA, cannot support a

24  preliminary injunction.

25          **IT IS SO ORDERED**.

26

27  Dated: January 14, 2013                    _____
                                              CHARLES  R. BREYER
28                                            UNITED STATES DISTRICT JUDGE